

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:10CR309–HEH |
| ) | Civil Action No. 3:13CV617–HEH |
| VAGAS DAVIS, ) | |
| ) | |
| Petitioner. ) | |

## MEMORANDUM OPINION
(Dismissing Claims One through Four; Granting Motion to Appoint Counsel)

Vagas Davis, a federal inmate proceeding *pro se*, filed this motion under 28 U.S.C. § 2255 ("§ 2255 Motion," ECF No. 57) to vacate, set aside, or correct his sentence. In his § 2255 Motion, Davis demands relief upon the following grounds:

Claim One   Trial and appellate counsel were ineffective for failing to object to hearsay evidence that violated Davis's Confrontation Clause[1] rights.

Claim Two   "Trial counsel was ineffective for failing to subpoena available records and fact witnesses which would have proved recent and legitimate sources of Davis's savings." (§ 2255 Mot. 10.)[2]

Claim Three   "Trial counsel was ineffective for failing to request that the jury be charged under and afforded consideration of [a] lesser-included offense" of simple possession. (*Id.* at 12.)

Claim Four   "Trial and appellate counsel were ineffective for failing to challenge the constitutionality of the [United States Sentencing Guidelines ("USSG")] as-applied, under the Sixth Amendment[3] . . . ." (*Id.* at 16.)

---

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[2] In citations to court filings, the Court employs the pagination automatically assigned by the CM/ECF system.

[3] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.

Claim Five   "Ineffective assistance of counsel deprived Davis of the opportunity to plead guilty he would have otherwise exercised." (*Id.* at 23.)

The United States has responded (ECF No. 64).[4] The matter is ripe for judgment. For the reasons explained below, the Court will dismiss Claims One through Four.

## I. Procedural History

On November 15, 2010, a grand jury indicted Davis on one count of possession with intent to distribute cocaine hydrochloride and cocaine base. (Indictment 1, ECF No. 7.) On February 24, 2011, the Court granted the Government's motion to amend the Indictment, striking references to cocaine base. (Am. Indictment 1, ECF No. 30.) The following day, the jury convicted Davis of possession with intent to distribute cocaine hydrochloride. (Jury Verdict 1, ECF No. 32.) A Probation Officer calculated Davis's offense level as 28, which included a two-point increase for possession of a firearm pursuant to USSG § 2D1.1(b)(1). (Presentence Report ("PSR"), Worksheet A, at 1.) With a criminal history category of III, this resulted in a guidelines sentencing range of 97–121 months. (PSR, Worksheet D, at 1.) The Court sentenced Davis to 121 months of imprisonment. (J. 2, ECF No. 48.)

Davis appealed. The United States Court of Appeals for the Fourth Circuit affirmed Davis's conviction, rejecting his argument that this Court "abused its discretion when it admitted his bank records because the records reflected daily expenses—not unexplained

---

[4] The United States argues that the one-year period of limitation for the filing of a § 2255 Motion bars Davis's § 2255 Motion. (Gov't's Resp. Opp. Pet'r's § 2255 Mot. 2–3 (citing 28 U.S.C. § 2255(f).) The Court received Davis's § 2255 Motion on September 10, 2013, six days after the statute of limitations expired; however, the Court deems an inmate's motion filed on the date it is handed to prison staff for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988). Due to deficiencies in the record, the Court cannot determine the constructive filing date, and therefore declines to dismiss Davis's § 2255 Motion on that ground.

expenditures—and were too remote in time from the charged offense." *United States v. Davis*, 474 F. App'x 110, 110–11 (4th Cir. 2012). The Fourth Circuit observed:

> "It is clear that evidence of unexplained wealth is relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains." *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986). Davis's bank records show substantial deposits despite the fact that Davis reported no income. The issue was not unexplained expenditures, but unexplained wealth. Further, we conclude that the records are not unduly remote as they reflected a pattern of activity that continued through the date charged in the indictment. Moreover, despite Davis's assertion to the contrary, Davis plainly possessed the drugs for distribution.

*Id.* at 110.

## II. Alleged Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Claim One

Davis claims that trial and appellate counsel provided ineffective assistance by failing to object to hearsay evidence that violated Davis's Confrontation Clause rights. Davis alleges three instances where trial counsel failed to object to evidence. First, Davis argues ineffective assistance because trial and appellate counsel failed to object to the testimony of witness Melinda Sayles that "a significant portion of Davis'[s] 2006–2007 income came from a $10,000 Social Security Benefit paid [to] Davis for the 2006 death of his father." (§ 2255 Pet. 5.) Davis alleges that this testimony supported "the [G]overnment's theory at trial that the $18,147.00 recovered at his home indicated drug trafficking by Davis . . . ." (*Id.*) Davis fails to explain why trial counsel should have objected to testimony about an alternative and legitimate source of Davis's income, or how any failure to object, prejudiced him. Davis further fails to identify grounds upon which appellate counsel could have objected, or how any objection would have benefitted Davis's appeal. Accordingly, Davis fails to show how either trial or appellate counsel provided deficient assistance.

Second, Davis argues that counsel rendered ineffective assistance for failing to object to witness Special Agent Henry Scott who "testified that his investigation into Social Security Administration records, (records neither drafted nor authored by him), revealed a total of $3,263.00 paid [to] Davis in Social Security Benefits between 2006 and 2007." (*Id.* at 5–6.) Davis claims that counsel should have objected because the Court would then have been "required to determine whether or not these records were 'testimonial,'" and violative of Davis's Confrontation Clause rights. (*Id.* at 8 (citations omitted).) Davis invokes *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), a case in which the Supreme Court held that affidavits reporting the results of forensic analysis fell within the "core class of

4

testimonial statements" covered by the Confrontation Clause; thus the individual who conducted the analysis must testify in court. *Id.* at 310 (internal quotation marks omitted). "In reaching this holding, the Court relied heavily on the fact that the affidavits at issue were specifically created for trial purposes." *United States v. Cabrera-Beltran*, 660 F.3d 742, 752 (4th Cir. 2011) (citing *Melendez-Diaz*, 557 U.S. at 324–25). Davis fails to demonstrate that counsel's failure to object to the Social Security Administration records was deficient. *United States v. Miller*, 394 F. App'x 18, 22 (4th Cir. 2010) (holding that Social Security Administration records "were not prepared for the purpose of proving some fact at trial, and are therefore not testimonial within the meaning of the Confrontation Clause" (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004))).

Third, Davis challenges trial counsel's failure to object to the testimony of witness Special Agent James Oxford of the United States Drug Enforcement Administration, who testified that after "reviewing the records of the Virginia Employment Commission, (records neither drafted nor authored by him), [he] identif[ied] no employment or legitimate source of income for Davis for the years 2006–2007." (§ 2255 Mot. 6.) The record directly contradicts Davis's claim, as his trial counsel *did* object to the admission of the records from the Virginia Employment Commission. (Feb. 24, 2011 Tr. 156–59.) Ultimately, after a bench conference, the Court overruled the objection, and admitted the records. (Feb. 24, 2011 Tr. 156–59.) Thus, Davis fails to demonstrate trial counsel acted deficiently with respect to Special Agent James Oxford's testimony. *Melendez–Diaz*, 557 U.S. at 324 (explaining that business records "are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial").

5

Furthermore, Davis fails to demonstrate that appellate counsel acted deficiently by failing to pursue the Confrontation Clause issue on appeal or that he would have prevailed on appeal. Accordingly, because Davis fails to show deficiency or prejudice, Claim One will be dismissed.

### B. Claim Two

The Government bolstered its case that Davis intended to distribute the cocaine found in his home with circumstantial evidence reflecting Davis had no significant source of income yet possessed over ten thousand dollars in cash and spent thousands of more dollars on rental cars and other expenses. In Claim Two, Davis faults counsel for failing to introduce evidence to suggest that Davis had a legitimate source for his unexplained wealth, specifically, "in or about 2006–07, [Davis] received a check in the amount of $42,000 from the death of [his] paternal grandmother, Katie Davis." (Davis Aff. ¶ 3, ECF No. 60.) Davis contends that with this information before the jury, the jury would have concluded that Davis "possess[ed] the 78.1 grams of cocaine - albeit for personal use." (§ 2255 Mot. 12.) As explained below, in light of the abundance of evidence reflecting that Davis possessed the drugs with the intent to distribute them and his other attempts to falsify the source of his income,[5] no reasonable possibility exists that the jury would have found him not guilty.

---

[5] Around October of 2009, Davis told his girlfriend, Melinda Sayles, that he had received a check for $10,000, from the Social Security Administration, related to the death of his father. (Feb. 24, 2011 Tr. 93–94.) Special Agent Henry Scott, with the Social Security Administration, testified that the Social Security Administration issued a $3,263 payment to Davis in 2007, but had not made payments to Davis after that date. (Feb. 24, 2011 Tr. 122.) Additionally, the police recorded a phone conversation between Sayles and Davis from jail, where Davis urged Sayles to claim the money recovered during the course of the search of their home belonged to her, even though none of the money belonged to Sayles. (Feb. 24, 2011 Tr. 90–92.)

On September 14, 2010, the police conducted a search of the residence Davis shared with his girlfriend, Melinda Sayles. Detective Sprinkle found Davis in the home, "within [an] arms length" of a large amount of cocaine. (Feb. 24, 2011 Tr. 20.) Detective Sprinkle also observed a digital scale with a small quantity of cocaine on it. (Feb. 24, 2011 Tr. 22.) The police seized a total of 78.1 grams of cocaine from Davis's residence. (Agreed Stipulations ¶ 2, ECF No. 31, at 2 (as paginated by CM/ECF).) Police also recovered small plastic baggies from inside a CD player. (Feb. 24, 2011 Tr. 165–66.) Special Agent James Oxford testified such baggies "have historically been used by drug traffickers to package dosage units for sale." (Feb. 24, 2011 Tr. 166.)

Davis told Detective Phillips that, with respect to the cocaine recovered from the house, that it belonged to him and he paid $700 for it. (Feb. 24, 2011 Tr. 127–28.) Davis told Detective Phillips that he uses seven grams a day. (Feb. 24, 2011 Tr. 130.) Sayles, however, stated that during her long relationship with Davis, she had never seen Davis use cocaine. (Feb. 24, 2011 Tr. 109.)

The police collected $18,147 in cash in conjunction with their search of Davis's residence.[6] (Feb. 24, 2011 Tr. 61.) The owner of the home testified that between May of 2010 and September of 2010, Davis paid the $1,250 in rent each month in cash. (Feb. 24, 2011 Tr. 77–78.) Additionally, between February of 2010 and June of 2010, Davis spent over $10,000 on rental vehicles, despite his access to a vehicle. (Feb. 24, 2011 Tr. 155.) Between February of 2010 and July of 2010, Davis made in excess of $21,000 in cash deposits into a BB&T bank account. (Feb. 24, 2011 Tr. 160.)

---

[6] Upstairs, in the pocket of a man's Polo jacket, Detective Sprinkle recovered $9,890 in cash. (Feb. 24, 2011 Tr. 42.) Next to the Polo jacket, Detective Sprinkle found a jean jacket, the pockets of which contained $7,000 in cash. (Feb. 24, 2011 Tr. 45–46.)

Special Agent Oxford testified that the amount of the cocaine confiscated from Davis's home constituted "748 dosage units of cocaine hydrochloride." (Feb. 24, 2011 Tr. 140.) According to Special Agent Oxford, an individual who claims to use seven grams of cocaine a day would spend approximately $21,000 a month and $250,000 year on his drug habit. (Feb. 24, 2011 Tr. 141.)

In summary, no reasonable probability exists that a jury would have concluded that Davis possessed the cocaine for personal use, but for counsel's failure to introduce some evidence regarding Davis's alleged receipt of $46,000.00 from the death of his grandmother in 2006 or 2007. First, Davis has yet to produce any "concrete evidence" of this alleged source of wealth. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004). Second, Davis's long-term girlfriend and housemate, Melinda Sayles, denied ever seeing Davis use cocaine. Third, the amount of drugs seized was inconsistent with personal use and Davis's financial capacity to sustain a drug habit at that level from any legitimate source of income. Finally, Davis's possession of small plastic baggies and a digital scale refute the notion that he possessed the cocaine recovered from his residence purely for personal use. Accordingly, Claim Two will be dismissed.

### C. Claim Three

In Claim Three, Davis argues that "[t]rial counsel was ineffective for failing to request that the jury be charged under and afforded consideration of [a] lesser-included offense . . ." of simple possession. (§ 2255 Mot. 12.) A defendant may request a lesser-included offense instruction if the evidence justifies it. *United States v. Baker*, 985 F.2d 1248, 1259 (4th Cir.1993). "To be entitled to the instruction [for a lesser-included offense of simple possession of cocaine], the defendant must present some 'evidence from which a

8

reasonable jury could find that [defendant's] intent was to possess the cocaine for personal use, rather than for distribution.'" *United States v. McKoy*, 498 F. App'x 369, 371 (4th Cir. 2012) (second alteration in original) (quoting *United States v. Wright*, 131 F.3d 1111, 1112 (4th Cir. 1997)).

In Davis's case, a reasonable jury could not have found that he intended to possess the cocaine for personal use. The parties stipulated that law enforcement officers recovered 78.1 grams of cocaine from Davis's residence (Agreed Stipulations ¶ 2), approximately 748 doses (Feb. 24, 2011 Tr. 140). When searching Davis's home, law enforcement also recovered a scale upon which sat a baggie containing a small amount cocaine. (Feb. 24, 2011 Tr. 21–22, 36–37.) Law enforcement also recovered $18,147 in cash, most of which was in the pockets of two men's jackets in Davis's bedroom. (Feb. 24, 2011 Tr. 42–43, 46–47, 61.) The evidence also showed that Davis spent over $10,000 on rental cars in the months preceding his arrest (Feb. 24, 2011 Tr. 154), despite having a working vehicle in his name (Feb. 24, 2011 Tr. 99). An expert in drug trafficking testified that the evidence presented indicated that Davis trafficked cocaine. (Feb. 24, 2011 Tr. 166.) Finally, Davis's long-term live-in girlfriend denied ever seeing Davis use cocaine. In light of the evidence, no reasonable jury would have convicted Davis of simple possession.[7] The evidence clearly does not justify a

---

[7] Davis directs the Court to *United States v. Levy*, 703 F.2d 791 (4th Cir. 1983), in which the Fourth Circuit found reversible error in the lower court's failure to instruct on the lesser included offense of simple possession when defendant possessed over four ounces of cocaine. *Id.* at 793. Davis ignores the Fourth Circuit's subsequent interpretations of *Levy*, which clarify the rule. Specifically, "in cases in which there is *substantial affirmative evidence of a defendant's personal drug use*, the defendant is entitled to a lesser-included possession instruction unless the amount of drugs the defendant possessed was large enough to preclude a reasonable inference of personal use." *United States v. Wright*, 131 F.3d 1111, 1113 (4th Cir. 1997) (emphasis added). No substantial evidence exists to suggest that Davis used cocaine.

9

lesser-included offense instruction. *Baker*, 985 F.2d at 1259. Accordingly, counsel's failure to request one is not deficient, nor did it prejudice Davis. Claim Three will be dismissed.

**D. Claim Four**

In Claim Four, Davis alleges that "[t]rial and appellate counsel were ineffective for failing to challenge the constitutionality of the U.S.S.G. as-applied, under the Sixth Amendment . . . ." (§ 2255 Mot. 16.) Davis challenges the increased drug quantity used in calculating his sentence derived from the quantity of cash seized from Davis's home (*id.* at 17) and a two-level increase in Davis's offense level for use of a firearm in connection with the offense (*id.*). *See* USSG § 2D1.1(b)(1). Davis argues that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), such judicial fact-finding violates the Sixth Amendment. Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). Davis faced a statutory maximum of 20 years, or 240 months, in prison. 21 U.S.C. § 841(b)(1)(C). The Court sentenced him to 121 months of imprisonment, (J. 2), well below the statutory maximum. Accordingly, *Apprendi* provides Davis no relief.

Davis also appears to argue that counsel ought to have challenged Davis's sentence relying on *dicta*, taken out of context, from Justice Scalia's concurrence in *Rita v. United States*, 551 U.S. 338, 371 (2007). Davis believes counsel should have argued that the Court's judicial fact-finding was unconstitutional "as applied" to Davis. (§ 2255 Mot. 19–23.) In order to provide effective assistance, attorneys need not pursue novel claims or

10

advance arguments unsupported by the law.[8] *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014) (citations omitted) (reiterating that the court has "consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions"). Clearly, both trial and appellate counsels' decision to not pursue such a strategy falls "'within the wide range of reasonable professional assistance.'" *Burch*, 273 F.3d at 588 (quoting *Strickland*, 466 U.S. at 689). Accordingly, Davis again fails to show deficiency or prejudice. Claim Four will be dismissed.

### E. Claim Five

Finally, in Claim Five, Davis alleges that "[i]neffective assistance of counsel deprived Davis of the opportunity to plead guilty he would have otherwise exercised." (§ 2255 Mot. 23.) Davis appears to raise two contentions: (1) counsel refused to pursue a plea agreement based upon Davis possessing only cocaine hydrochloride; and (2) counsel failed to inform Davis of the possibility and benefits of pleading guilty without a plea agreement.[9]

Specifically, Davis states that the Government offered him a plea where the base offense level would have been 26, "resulting in a U.S.S.G. range of 63–78 months imprisonment, and a five year mandatory minimum." (*Id.* at 23–24) This plea allegedly

---

[8] "A sentence imposed within the properly calculated Guidelines range is presumed reasonable by this court." *United States v. Johnson*, 546 F. App'x 251, 251–52 (4th Cir. 2013) (citing *Rita*, 551 U.S. at 347; *United States v. Mendoza-Mendoza*, 597 F.3d 212, 217 (4th Cir. 2010)). "[A] defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the [18 U.S.C.] § 3553(a) factors." *Id.* (first alteration in original) (quoting *United States v. Montes-Pineda*, 445 F.3d 375, 379 (4th Cir. 2006)). Davis wholly fails to show how any court could find his sentence, which was both within the guidelines and well below the statutory maximum, unreasonable.

[9] Although Davis describes the terms of the proposed plea agreement, he does not seem to allege that he would have accepted the plea bargain absent counsel's alleged deficient performance. Instead, he argues that he would have pled guilty, even without a plea agreement, to an indictment that simply charged possession with intent to distribute cocaine.

required Davis to plead guilty to the original indictment, charging Davis with possession with intent to distribute both cocaine base and cocaine hydrochloride (powder cocaine). According to Davis, he "requested counsel to investigate and arrange a plea predicated only on powder cocaine," but that "counsel refused; charging Davis with being confused in the matter." (*Id.* at 24.) Davis also states that on January 14, 2010, over a month before trial, counsel informed him that the laboratory analysis of the seized drugs found only cocaine hydrochloride. (*Id.*) Finally, Davis further argues that "counsel never informed [him] that he could plead guilty without the benefit of a plea agreement," so when forensic tests confirmed he only possessed cocaine hydrochloride, he could "receive the Base Offense Level attendant [to] the powder cocaine found," and "he would have been eligible for a three level reduction in his Final Offense Level for Acceptance of Responsibility." (*Id.*)

In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue." *United States v. Dickerson*, 546 F. App'x 211, 213–14 (4th Cir. 2013) (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000)).

Davis presents a colorable claim that, but for counsel's deficient performance, "he would have [tendered] a plea that would have been accepted by the court, and that 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Id.* at 214 (citing *Lafler v.*

12

*Cooper*, 132 S. Ct. 1376, 1385 (2012)). In its Response, the Government failed to address the terms of the proposed plea agreement or produce an affidavit or sworn declaration from Davis's counsel. Accordingly, the Court cannot say that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), so the Court will order an evidentiary hearing on Claim Five.

### III. Motion to Appoint Counsel

On September 10, 2013, Davis submitted a Motion to Appoint Counsel. (ECF No. 58.) Petitioners possess no constitutional right to appointed counsel in post-conviction proceedings. *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997). The Court, however, may appoint counsel to a financially eligible person if justice so requires. *See* 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A. Because it has come to the Court's attention that there may have been improprieties relating to the affidavits underlying the search warrant in this matter, the Court will grant Davis's Motion to Appoint Counsel (ECF No. 58) so Davis may have assistance of counsel in determining if he is entitled to relief under § 2255 on additional grounds.

Davis's Motion for Discovery (ECF No. 59) will be denied without prejudice. Counsel for Davis remains free to refile any motion for discovery he deems appropriate.

## IV. Conclusion

Claims One through Four will be dismissed. Davis's Motion to Appoint Counsel (ECF No. 58) will be granted. Counsel for Davis and counsel for the Government shall contact chambers of the undersigned, within eleven (11) days of the date of entry hereof, to schedule a hearing in this matter.

An appropriate Order will accompany this Memorandum Opinion.

                                                  /s/
                                  Henry E. Hudson
                                  United States District Judge

Date: March 30, 2015
Richmond, Virginia