IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA          )
                                  )
v.                                )     Criminal No.: 3:10CR309–HEH
                                  )     Civil Action No.: 3:13CV617–HEH
VAGAS DAVIS,                      )
                                  )
          Petitioner.             )

## MEMORANDUM OPINION
(Dismissing Claim Five of Petitioner's Motion to Vacate, Set Aside, or
Correct Sentence Pursuant to 28 U.S.C. § 2255; Denying Petitioner's Supplemental
Motions to Vacate, Set Aside and Correct Conviction and Sentence; and Granting
Government's Motion for Summary Judgment)

Vagas Davis ("Davis"), a federal inmate initially proceeding *pro se*, filed his

Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255

Mot.," ECF No. 57) seeking to vacate, set aside, or correct his sentence.  By

Memorandum Opinion filed March 31, 2015, and accompanying Order (ECF Nos. 71,

72, respectively), this Court dismissed Claims One through Four of his initial § 2255

Motion.  With respect to Claim Five, alleging "[i]neffective assistance of counsel

depriv[ing] Davis of the opportunity to plead guilty he would have otherwise exercised"

(§ 2255 Mot. at 23), the Court determined that it could not conclude that "the motion and

the files and records of the case conclusively show that the prisoner is entitled to no

relief." 28 U.S.C. §2255(b).

Pursuant to § 28 U.S.C. § 2255(b), the Court appointed Charles A. Gavin, Esquire

to represent Davis and scheduled an evidentiary hearing on Claim Five.  This Court was

also informed, subsequent to Davis's filing of his original § 2255 Motion, that there may

have been improprieties relating to the affidavit underlying the search warrant in this case. The Court therefore enlarged the scope of counsel's representation to include a determination of whether Davis is entitled to relief under § 2255 on the additional ground that the affidavit contained false representations attributed to an alleged confidential informant.

After investigating the integrity of the search warrant in this case, Davis's counsel filed an Amended Motion and Memorandum of Law to Vacate, Set Aside and Correct Conviction and Sentence (ECF No. 75). Subsequently, the United States responded with a Memorandum of Points and Authorities in Support of Motion for Summary Judgment (ECF No. 89) opposing § 2255 relief based on the purported truth of the affiant's allegations in the affidavit. In Davis's Response to Government's Motion for Summary Judgment (ECF No. 90), counsel acknowledged evidence corroborating the informant's representations, but urged the Court to find the affidavit deceptive. Counsel encouraged the Court to vacate Davis's conviction and conduct a hearing under *Franks v. Delware*, 438 U.S. 154 (1978), to explore whether the affidavit contained false statements, made knowingly and intentionally or with reckless disregard for the truth, essential to the underlying probable cause determination. Meanwhile, Davis independently filed a *pro se* Supplemental Motion and Memorandum of Law to Vacate, Set Aside and Correct Conviction and Sentence[1] (ECF No. 88) addressing the search warrant related issues.

---

[1] On August 12, 2015, following the evidentiary hearing, Davis presented to the Court an additional *pro se* Supplemental Motion and Memorandum of Law to Vacate, Set Aside and Correct Conviction and Sentence (ECF No. 93) which reiterated previous claims as well as added newly-crafted assertions.

On August 12, 2015, the Court conducted an evidentiary hearing on Claim Five of the original § 2255 Motion, limited to whether former counsel properly informed Davis of his plea options. Davis maintained that his former counsel was ineffective in two respects: first, that she refused to pursue a plea agreement based on possession of only cocaine hydrochloride;[2] and secondly, that she failed to inform him of the benefit of a three-level reduction for acceptance of responsibility if he entered a plea of guilty without any formal agreement with the Government. After hearing the testimony of both Davis and his trial counsel, this Court must conclude that Davis would not have accepted a plea offer on the terms proposed by the United States. Conversely, the United States would not have seriously entertained the type of plea agreement Davis contemplated prior to trial.

Davis testified during the evidentiary hearing that he was willing to plead guilty to possession of cocaine hydrochloride with the intent to distribute, the remaining charge in the Amended Indictment (ECF No. 30), but on his terms. He was steadfast on cross examination, however, that he would not plead guilty if the quantity of cocaine hydrochloride, for which he was being held accountable under the U.S. Sentencing Guidelines, included the conversion of over $17,000 in cash into its equivalent drug value. The currency, in a variety of dominations, was seized during the execution of the search warrant by detectives of the Richmond City Police Department. It was found in several locations in different items of clothing. Davis reiterated at the evidentiary hearing

---

[2] The Indictment originally charged Davis with possession with intent to distribute a detectable amount of cocaine hydrochloride and 28 grams or more of cocaine base. Prior to trial, the Government amended the Indictment by striking the allegations relating to cocaine base.

his contention that this money was derived from legitimate sources and inveighed that he would not agree to its conversion to its drug equivalent as part of a plea agreement. (Hr'g Tr. at 31:9–16; 47:21–48:9, Aug. 12, 2015); *see United States v. McGee*, 736 F.3d 263, 271–72 (4th Cir. 2013). Davis also testified that he would not consent to a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of the offense of possession with intent to distribute drugs. (Hr'g Tr. at 47:21–48:9.)[3]

Davis's trial counsel, Elizabeth W. Hanes ("Hanes"), an Assistant Federal Public Defender, described her representation of Davis as "rocky." (*Id.* at 51:8–9.) She testified that during the course of her representation, she met with Davis approximately twelve times. (*Id.* at 52:8–15.) She informed him that it was in his best interest to plead guilty to the powder cocaine charge and accept the two-level enhancement for the firearm along with conversion of the seized currency to its drug equivalent. (*Id.* at 63:22–64:1.) Davis maintained that he would accept no offer that involved the cash conversion. (*Id.* at 47:21–48:9.) Hanes made clear to Davis that this was a critical element of any agreement with the Government. Moreover, according to Hanes, Davis was not inclined to enter a plea but appeared to be more focused on going to trial. (*Id.* at 58:18–22, 60:3–8.)

In fact, at the evidentiary hearing, Davis made this clear on cross examination:

Q:    Now, when you went to trial, I'm kind of confused, because you're saying on the one hand that you wanted to plead guilty but on the other you're saying you wanted her to fight your case.

A:    I'm confused too.

---

[3] A firearm was seized at the residence during the execution of the search warrant.

Q:     Did you want to plead guilty?

A:     I wanted to -- I wanted to -- I wanted to beat my case and get my
       case vacated and thrown out.

Q:     So you wanted to go to trial, if that's what it took?

A:     Of course.

(*Id.* at 43:13–22.)  From the testimony adduced at the evidentiary hearing, it was apparent

that Davis and the Government were far apart in their view of the evidence and

evaluation of the case.  (*Id.* at 57:24–58:22, 64:13–65:4.)

In *Missouri v. Frye*, the United States Supreme Court reiterated that the Sixth

Amendment right to effective assistance of counsel applies to all critical stages of

criminal proceedings, including the consideration of plea offers that lapse or are rejected.

132 S. Ct. 1399, 1405–08 (2012).  The court in *Frye* also emphasized that the two-part

test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective

assistance claims in the plea bargaining context.  *Frye*, 132 S. Ct. at 1405 (citing *Hill v.

Lockhart*, 474 U.S. 52, 57 (1985)).  The negotiation and acceptance of a plea offer is a

critical stage of the proceedings during which the right to counsel adheres.  *Lafler v.

Cooper*, 132 S. Ct. 1376, 1392 (2012) (Scalia, J., dissenting) (citing *Padilla v. Kentucky*,

559 U.S. 356, 373 (2010)).

To prevail on a petition alleging ineffective assistace of counsel under 28 U.S.C. §

2255, a petitioner must show first that counsel's representation was deficient and second

that the deficient performance prejudiced the defendant.  *Strickland*, 466 U.S. at 687.  To

satisfy the deficient prong of *Strickland*, the defendant must overcome the "'strong

presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable

professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting

*Strickland*, 466 U.S. at 689).[4] As to prejudice, a defendant "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371.

    In analyzing ineffective assistance of counsel claims, the Court need not determine

whether counsel performed deficiently if the claim is readily dismissed for lack of

prejudice. *Strickland*, 466 U.S. at 697. To prove an actionable claim, the petitioner must

demonstrate a "reasonable probability of a different outcome." *Lenz v. Washington*, 444

F.3d 295, 303 (4th Cir. 2006) (internal citations and quotation marks omitted). For

Davis, this is an unsurmountable hurdle.

    Given the nuanced art of plea negotiations, reviewing courts have been reluctant to

define detailed standards for the proper discharge of defense counsel's participation in the

process. *See Premo*, 562 U.S. at 125. The court in *Premo* also counseled reviewing

courts to be mindful of the "potential for the distortions and imbalance that can inhere in

a hindsight perspective." *Id.* A defendant in a criminal case, however, has "no

---

[4] As Justice Kennedy noted in writing for the Court in *Premo v. Moore*, "[t]he question is
whether an attorney's representation amounted to incompetence under prevailing professional
norms, not whether it deviated from best practices or most common custom." 562 U.S. 115, 122
(2011) (internal quotation marks and citations omitted). Justice Kennedy also counseled that
"[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse
sentence.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

In the immediate case, Davis offers no evidence that his trial counsel failed to either convey a plea offer to him or discuss with him viable plea options. On cross examination, he admitted that trial counsel advised him that he may be entitled to a three-level reduction in his guidelines for acceptance of responsibility. (Hr'g Tr. at 27:4–17.) Moreover, Davis also conceded that he never asked trial counsel to explore a possible plea of guilty to possession with the intent to distribute cocaine hydrochloride. (*Id.* at 28:1–15.) Lastly, he explained that he would reject any agreement that included sentencing enhancements for conversion of cash into drug equivalents or possession of a firearm. (*Id.* at 47:21–48:9.) Consequently, Davis has failed to demonstrate a reasonable probability of a different outcome because the record fails to support a plausible argument that the Government would have seriously entertained his proposed plea offer.

Despite a broad array of challenges to the wisdom and judgment of his counsel, Davis has not demonstrated that counsel's performance was inadequate, ineffective, or prejudicial. Therefore, Claim Five of Davis's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 will be dismissed.[5]

---

[5] In Davis's first *pro se* Supplemental Motion and Memorandum of Law, filed prior to the evidentiary hearing, he asserts an additional ineffective assistance of counsel claim that his trial and appellate counsel failed to move to suppress the fruits of the search warrant at an earlier stage of the proceedings. (Def.'s Suppl. Mot. to Vacate at 6–8, ECF No. 88.) Davis, however, points to no evidence that counsel was aware of any plausible ground to challenge the search of his residence prior to the Government's disclosure of the affiant's misrepresentation in other cases.

Turning next to Davis's Amended Motion and Memorandum of Law to Vacate, Set Aside and Correct Conviction and Sentence ("Am. § 2255 Mot.," ECF No. 75), he urges the Court to vacate his conviction and order a hearing pursuant to *Franks v. Delaware*. This additional claim evolves from notification by the United States that the affiant who had obtained the search warrant to search the residence where Davis was apprehended "was under investigation for possible impropriety in obtaining several search warrants." (Am. § 2255 Mot. at 1.) The letter from the United States Attorney further revealed that "five cases were identified as possible cases where it was possible, if not probable, that the lead officer, . . . had fabricated information with regard to the informant and/or the informant's reliability in order to obtain the search warrant." (*Id.* at 2.) As a result of the Government's investigation, this Court vacated convictions in three of those related cases involving the same affiant. Davis now contends that the affiant "also acted illegally and outrageously in securing the search warrant which led to Davis' arrest and ultimate conviction." (*Id.*)

The operative language in the search warrant affidavit which Davis challenges is as follows:

> The reliable source mentioned in this affidavit is considered reliable to this affiant based on information they have provided this affiant for the past two days. The reliable source has provided this affiant with information regarding criminal activity that has been proven through independent police investigation. The reliable source has been shown photographs and identified narcotics and narcotic suppliers. Finally, the reliable source has recognized individuals known to this affiant that sell illegal narcotics. The

points to no evidence that counsel was aware of any plausible ground to challenge the search of his residence prior to the Government's disclosure of the affiant's misrepresentation in other cases.

reliable source has distributed cocaine and heroin in the past and is familiar with the way cocaine and heroin is packaged for streel-level distribution. In addition, the reliable source is familiar with the methods used by those who distribute street-level drugs. The reliable source has stayed in constant contact with this affiant in regards to updating specific information into the address of 3100 Woodrow Avenue.

(*Id.* at 3, Ex. A ¶ 7.) As a result of the issuance of this search warrant, the residence at

3100 Woodrow Avenue, Richmond, Virginia was searched on September 4, 2010.

According to his Amended § 2255 Motion, Davis was detained in the kitchen area

of that residence in close proximity to a large amount of cocaine. (*Id.* at 3.) A digital

scale with cocaine was also recovered in the kitchen. (*Id.*) A Ruger mini 14 semi-

automatic assault style rifle was seized from a separate room. (*Id.*) Currency totaling

$17,890 was discovered in a second floor bedroom. (*Id.*)

The Government has acknowledged that the affiant applying for the search

warrant for the 3100 Woodrow Avenue residence appears to have misrepresented the

reliability of informants in a number of unrelated search warrant affidavits. Three of

those resulted in the dismissal of the underlying case at the Government's request. In

those cases, the affidavit used identical boilerplate language to establish the reliability of

the informant. The informants in those cases were interviewed by the FBI and either

denied being the source of the information or characterized its content as inaccurate. (*Id.*

at 7.)

Davis acknowledges, however, that "the typical deceptive word pattern utilized by

[the affiant] in other search warrants, . . . does not necessarily appear in the search

warrant affidavit in Davis' case." (*Id.*) Focusing on this observation, the Government

points out that the language employed by the affiant in obtaining a search warrant for

Davis's residence differed in a number of respects from the word pattern utilized to

secure the spurious search warrants. (Gov't's Mem. in Support Mot. Summ. J. at 4, ECF

No. 89.) The Government highlights several material differences, such as affiant's

contact with the confidential source over a two day period rather than a working

relationship over an extended period of time. Furthermore, the information source used

in Davis's case was not reported to be a paid informant. (*Id.*) The Government was also

able to authenticate other representations attributed to the informant.

In support of its Motion for Summary Judgment, the United States submitted the

affidavit of Special Agent James Oxford of the Drug Enforcement Administration

("DEA"). (Gov't's Mem. in Supp. Mot. Summ. J., Ex. 4, hereinafter "Oxford Aff.".)

Special Agent Oxford explained that through his investigation he was able to identify the

source of information described in the 3100 Woodrow Avenue affidavit. (Oxford Aff. ¶

2.) Utilizing phone record analysis, DEA Intelligence Analyst Leslie A. Harris was able

to confirm that the source of information identified by Special Agent Oxford was in fact

the individual in telephone contact with the affiant during the time frame mentioned in

the affidavit. (Gov't's Mem. in Support Mot. Summ. J., Ex. 3 ¶¶ 3–4.) The analysis

revealed 27 telephone calls exchanged during the September 13–14, 2010 time frame

between the identified source of information and the affiant. (*Id.* ¶ 6.)

According to Special Agent Oxford's affidavit, the identified informant was

verified as being the source of information contained in the affidavit at issue. (Oxford

Aff. ¶ 4.) In response to questions posed by Special Agent Oxford, the source of

information confirmed each of the pertinent facts in the affidavit forming the basis for probable cause for the issuance of the search warrant. (*Id.*)

In his response to the Government's Motion for Summary Judgment, Davis draws the Court's attention to several perceived discrepancies between the affidavits of the DEA investigators and the search warrant affidavit. None, however, casts doubt as to the identity of the informant or the reliability of the information provided. In fact, Davis notes in his response that "[i]f accepted by the court, defense counsel will have to concede that several of the facts relayed by the [source of information] to Agent Oxford generally match with the material facts contained in paragraph 4 of the search warrant affidavit, and within the reliability section of the search warrant affidavit, paragraph 7." (Davis's Resp. to Gov't's Mot. Summ. J. at 2, ECF No. 90.) Davis adds, "[t]he question then becomes, to put a finer point on the issue, is whether, based on the information which is now known, [affiant] exaggerated that information, or omitted information from consideration by the magistrate which, if included, or if not exaggerated, would have caused the magistrate to deny the finding of probable cause. (*Id.* at 2–3.)

Although the United States seeks summary judgment on Davis's supplemental § 2255 claim, the pivotal issue is whether he is entitled to an evidentiary hearing under *Franks v. Delaware*. To merit an evidentiary hearing, Davis must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. If Davis satisfies that requirement, he must next demonstrate that the offending information is essential to the probable cause determination. If the affidavit is

11

sufficient to support a finding of probable cause without the allegedly fabricated information, no *Franks* hearing is required. *United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011). The office of a *Franks* hearing is to safeguard against the admission of evidence seized "pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir.), *cert. denied*, 531 U.S. 875 (2000).

In this case, Davis's challenge to the integrity of the affidavit founders at the threshold. Davis has offered no evidence to refute the affidavit of Special Agent Oxford recounting his interview of the source of information described in the affidavit. He concedes that the boilerplate language fatal in other cases is not present in the immediate affidavit. (Am. § 2255 Mot. at 7.)

The flaws noted by Davis are not only marginal but speculative. He characterizes the affiant's alleged contact with the source of information, described in the affidavit as over two days, as exaggerated. Even though the contact span was only four hours, it was in fact over a two day period—September 13–14, 2010. Furthermore, even if the number of phone calls between the affiant and the source of information was incorrect, it would not affect the sufficiency of the affidavit to demonstrate probable cause.

While reprehensible, the affiant's fabrication of affidavits in unrelated cases may engender justifiable suspicion, it does not per se taint the affidavit in this case. Davis has failed to make the requisite substantial preliminary showing triggering the need for a *Franks* hearing. *See United States v. Blatstein*, 482 F.3d 725, 731 (4th Cir. 2007); *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994).

Based on the foregoing analysis, the Court must conclude that there is no genuine dispute as to any material fact and that the Government is entitled to judgment as a matter of law. Even viewed in the light most favorable to Davis, the record at hand does not support relief under 28 U.S.C. § 2255. Davis's Amended Motion to Vacate, Set Aside and Correct Conviction and Sentence, based on alleged fabricated and falsified information in the affidavit supporting the search warrant in this case, will be denied.

In his second *pro se* Supplemental Motion and Memorandum of Law to Vacate, Set Aside and Correct Conviction and Sentence (ECF No. 93), filed in open court on August 12, 2015, Davis launches a myriad of procedural challenges which were raised neither at trial nor on direct appeal, or were rejected by the Fourth Circuit. These generally include inadequacy of the affidavit to support a finding of probable cause, unlawful arrest, failure of the indictment to state an offense, confusing verdict form, and a claim of actual innocence,[6] along with another inscrutable assertions.

Davis is precluded from re-litigating issues already addressed by the Fourth Circuit absent an intervening change in the law. *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009). The balance of his remaining claims are defaulted. Each of these claims could have been raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982).

---

[6] Net of rhetoric, Davis's claim of innocence is essentially an invitation to review the sufficiency of the evidence introduced during his trial. He identifies no newly-discovered evidence. His unadorned argument fails to satisfy the "extraordinarily high" threshold showing articulated in *Herrera v. Collins*, 506 U.S. 390, 417 (1993). *See also Schlup v. Delo*, 513 U.S. 298, 315–16 (1995).

Accordingly, Davis's second Supplemental Motion and Memorandum of Law to Vacate, Set Aside and Correct Conviction and Sentence will also be denied.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Davis has not satisfied this standard. Accordingly, a certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: Oct 15, 2015
Richmond, VA